Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **BAYMONT FRANCHISE SYSTEMS, INC.,** | |
| **Plaintiff,** | Civil Action No.: 23-20313 (ES) (MAH) |
| **v.** | **OPINION** |
| **SRI HANUMAN, LCC, MIKE MEHTA,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Baymont Franchise Systems, Inc.'s ("Plaintiff" or "BFS")

motion for default judgment against Defendants Sri Hanuman, LLC and Mike Mehta (together,

"Defendants"). (D.E. No. 13 ("Motion" or "Mot."); *see also* D.E. No. 13-3 ("Moving Brief" or

"Mov. Br.")). The Motion is unopposed. The Court has carefully considered Plaintiff's

submissions, as well as the balance of the record, and decides the matter without oral argument.

*See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS**

Plaintiff's motion.

## I.    BACKGROUND[1]

Plaintiff alleges that, on or about October 29, 2020, it entered into an agreement (the

"Franchise Agreement") with Defendant Sri Hanuman "for the operation of a 74-room . . . guest

lodging facility [(the "Facility")]." (Compl. ¶ 10).[2]   The Agreement required Defendant Sri

---

[1]    The Court has drawn the background described herein from Plaintiff's Complaint, (D.E. No. 1 ("Complaint" or "Compl.")), as it must accept Plaintiff's factual allegations—other than those related to damages—as true by virtue of Defendants' default. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820 (D.N.J. 2021).

[2]    Plaintiff attached a copy of the Franchise Agreement to its Complaint as Exhibit A.  (*See* D.E. No. 1 at 12–63 (ECF Pagination) ("Franchise Agreement" or "Exhibit A")).  Plaintiff likewise attached a copy of the Guaranty,

Hanuman "to select, acquire, construct, and/or renovate the Facility as provided in Schedule D." (Compl.¶ 11; *see also* Exhibit A).  Defendant Sri Hanuman further agreed to pay interest "'on any past due amount payable to [BFS] under [the] [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.'"  (Compl. ¶ 13).  Further, "[p]ursuant to section 6 of the Franchise Agreement, Sri Hanuman agreed to pay a non-refundable Application Fee of $2,500.00, which would be applied to Sri Hanuman's Initial Fee of $15,000.00."  (*Id*. ¶ 14).[3]  In the event of termination of the Agreement pursuant to section 11.2, Defendant Sri Hanuman agreed to "pay liquidated damages to BFS in accordance with a formula specified in the Franchise Agreement." (*Id*. ¶ 17).  Section 12.1 set liquidated damages at an amount not less than "$2,000 per guest room described on Schedule B."  (*Id*. ¶ 18).

Defendant Mehta provided Plaintiff "with a Guaranty of Sri Hanuman's obligations" under the Franchise Agreement.  (*Id.*  ¶ 20; *see also* Exhibit B.).  Accordingly, "Mehta agreed, among other things, that upon a default under the Franchise Agreement, he would 'immediately make each payment and perform or cause [Sri Hanuman] to perform, each unpaid or unperformed obligation of [Sri Hanuman] under the [Franchise] Agreement.'"  (Compl. ¶ 21).

---

(*see id*. at 65 (ECF Pagination) ("Guaranty" or "Exhibit B")), and the Initial Fee Note, (*see id*. at 67–68 (ECF Pagination) ("Initial Fee Note" or "Exhibit C")).  Plaintiff attached the same documents to the affidavit of Kendra Mallet in support of its Motion, (D.E. No. 13-1), and also added (i) a letter from Plaintiff to Defendant Sri Hanuman, dated February 9, 2021, (*see* D.E. No. 13-1 at 69 (ECF Pagination) ("Exhibit D")); (ii) a letter from Plaintiff to Defendant Sri Hanuman, dated September 17, 2021, (*see id*. at 71 (ECF Pagination) ("Exhibit E")); (iii) a letter from Plaintiff to Defendant Sri Hanuman, dated November 28, 2022, (*see id*. at 73–74 (ECF Pagination) ("Exhibit F")); and an itemized statement of the amount due to Plaintiff, (*see id*. at 76 (ECF Pagination) ("Exhibit G")).

[3]        "Pursuant to section 11.2 of the Franchise Agreement, BFS could terminate the Franchise Agreement, with notice to Sri Hanuman, if Sri Hanuman: (a) discontinued operating the Facility as a Baymont® guest lodging establishment, (b) lost possession or the right to possession of the Facility, and/or (c) [received] two or more notices of default under the Franchise Agreement in any one-year period, whether or not the defaults were cured."  (Compl. ¶ 16).

On October 29, 2020, both Defendants co-made an Initial Fee Note in the amount of $15,000. (*Id.* ¶ 23; *see also* Exhibit C). "Pursuant to the terms of the [Initial Fee] Note, the principal sum of $15,000.00 was payable to BFS in one (1) installment due on the earlier of November 6, 2020, or on the Opening Date of the Facility." (Compl. ¶ 24). Further, upon a termination of the Franchise Agreement for any reason, the outstanding balance on the Note shall be paid immediately. (*Id.* ¶ 25). "[I]f the Note is not paid within ten (10) days after it is due, the outstanding principal shall bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by applicable law from its due date until paid." (*Id.* ¶ 26).

On February 9, 2021, Plaintiff advised Defendant Sri Hanuman that it was in breach of the Franchise Agreement because its "checks for the non-refundable Application Fee and Initial fee were returned for insufficient funds." (*Id.* ¶ 28; *see also* Exhibit D). Plaintiff informed Defendant Sri Hanuman that it had "thirty (30) days within which to cure this monetary default, and . . . if the default was not cured, then the Franchise Agreement might be subject to termination." (*Id.*). On September 17, 2021, Plaintiff terminated the Franchise Agreement and "advised Sri Hanuman that it was required to pay to BFS liquidated damages for premature termination and the outstanding balance of the Application Fee and Initial Fee as required under the Franchise Agreement." (*Id.* ¶ 29). Plaintiff alleges that, "[d]espite their obligation to do so, Sri Hanuman and Mehta have not made any payment." (*Id.* ¶ 31). Plaintiff further alleges that it has "satisfied all of its obligations under the Franchise Agreement." (*Id.* ¶ 32).

## II.   PROCEDURAL HISTORY

Plaintiff filed its Complaint against both Defendants on September 12, 2023. (*See generally* Compl.). On September 18, 2023, the summons issued. (D.E. No. 4). On December

3

12, 2023, Plaintiff filed an affidavit representing that, "despite diligent efforts and inquiry," it had been "unable to serve defendant Sri Hanuman, LLC, by serving its registered agent Mike Mehta." (D.E. No. 8 at 1). It further represented that it had been unable to serve Defendant Mehta in his personal capacity. (*Id*. at 2). Further, "[b]y letter dated December 7, 2023, . . . BFS served Defendants with a copy of the Summons and Complaint via regular and certified mail, return receipt requested pursuant to Fed R. Civ. P. 4(e)(1)." (*Id*.).

On January 10, 2024, Plaintiff requested that the Clerk of the Court enter default as to both Defendants. (D.E. No. 9). The Clerk did so on January 12, 2024. By Order dated January 16, 2024, the Court issued guidance regarding Plaintiff's anticipated motion for default judgment. (D.E. No. 10). On June 4, 2025—after over a year of inaction from either party—the Court issued a notice of call for dismissal pursuant to Local Civil Rule 41.1(a). (D.E. No. 12). On June 10, 2025, Plaintiff filed the operative Motion (D.E. No. 13), which remains unopposed.

## III.   LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting such relief. Fed. R. Civ. P. 55(b)(2).

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the

4

parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at \*1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at \*2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensure that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at \*2 (D.N.J. Aug. 25, 2015) (citation modified).

## IV.    DISCUSSION

### A.    Jurisdiction

#### i.    Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this case. District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and that are between citizens of different States. 28 U.S.C. § 1332(a). A limited liability company ("LLC") maintains the citizenship of each of its members. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). The citizenship of a natural person is determined by the state in which the person is domiciled. *Id.* at 104.

The record indicates that the Plaintiff is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New Jersey. (Compl. ¶ 1; *see*

*also* Mov. Br. at 4). Defendant Sri Hanuman, on information and belief, is an LLC organized under the state of Louisiana, with its principal place of business at 303 Tottenham Court, Bossier City, Louisiana 71111. (*See* Mov. Br. at 4). Mehta Corp., also a corporation organized under the state of Louisiana with its principal place of business at the same, is the sole member of the LLC. (Compl. ¶¶ 2–5; *see also* Mov. Br. at 4). Individual Defendant Mike Mehta is a shareholder of Mehta Corp. and a citizen of the state of Louisiana. (Mov. Br. at 4). There is, therefore, complete diversity between Plaintiff (a citizen of New Jersey) and all Defendants (both citizens of Louisiana).

Plaintiff alleges that the amount in controversy, exclusive of prejudgment interest, is $163,000.00—which exceeds $75,000. (Compl. ¶ 6; *see also* Mov. Br. at 4). "This dollar amount is BFS's calculation of the total of liquidated damages, and the outstanding principal balance of the Note, exclusive of prejudgment interest, that Defendants owe BFS pursuant to the terms of the Franchise Agreement, Guaranty, and the Note." (Mov. Br. at 4). Given that there is complete diversity of citizenship between Plaintiff and both Defendants, and that the amount in controversy exceeds $75,000, the Court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

### ii.    Personal Jurisdiction

The Court next finds that it may exercise personal jurisdiction over Defendants. Effective service of process is the mechanism by which the court itself obtains personal jurisdiction over a defendant. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant."). As shown below, the Court finds that Plaintiff properly effectuated personal service

on both Mehta in his personal capacity and in his role as the principal of Sri Hanuman, LLC.  (*See generally* D.E. No. 8).

Moreover, a valid forum selection clause provides a separate basis for personal jurisdiction. *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (holding that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."); *see also In Re Diaz Contracting, Inc.*, 817 F.2d 1047, 1050 n.5 (3d Cir. 1987) (declaring the *Bremen* holding to be in accord with New Jersey law). A party who executes a guaranty for a contact with a forum selection clause is likewise subject to the clause.  *See Shelter Sys. Grp. Corp. v. Lanni Builders, Inc.*, 263 N.J. Super 373, 375 (App. Div. 1993).  In Section 17.6.3 of the Franchise Agreement, Defendant Sri Hanuman consented to "the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey."  (*See* Mov. Br. at 5 (citing Ex. A at 25)).  As Defendant Mehta executed the Guaranty, he is subject to the same.  Moreover, the Guaranty explicitly states:  "We acknowledge that Section 17 of the Agreement, including Remedies, Venue, Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty."  (Exhibit B).  Defendants are, therefore, subject to personal jurisdiction in this forum by virtue of both proper service and the forum selection clause.

## B.    Proper Service

The Court finds that Plaintiff properly effectuated service on Defendants.  Relevant here is Federal Rule of Civil Procedure 4(e)(1), which incorporates methods for service under the New Jersey Rules of Court.  New Jersey Court Rule 4:4-4(b), in turn, authorizes service by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, if

7

personal service cannot be effectuated after a reasonable and good faith attempt.[4]  New Jersey Court Rule 4:4-5(b) requires a plaintiff to submit an affidavit stating that despite diligent inquiry and effort, the defendant cannot be personally served in New Jersey.  N.J. Ct. R. 4:4-5(b).  New Jersey Court Rule 4:4-5(b)(3) provides that does not require a court order in advance of effectuating service in this manner.

Here, Plaintiff filed an affidavit representing that, despite diligent efforts and inquiry, it was unable to effectuate personal service on either Defendant.  Plaintiff attached Affidavits of Diligent Efforts as to both Defendants and a copy of its December 7, 2023 letter serving the Summons and Complaint via regular and certified mail, return receipt requested.  (*See* D.E. No. 8).  Plaintiff therefore successfully served Defendants in accordance with Federal Rule of Civil Procedure 4(e)(1).

## C.      Sufficient Cause of Action

The Court finds that Plaintiff has sufficiently stated claims for breach of contract against both Defendants.  The elements of a cause of action for breach of contract under New Jersey law are: (i) a valid contract; (ii) a breach by the defendant; and (iii) resulting damages.  *See, e.g.*, *Coyle v. Englander's*, 199 N.J. Super. 212, 221–23 (App. Div. 1985); *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *DeCozen Chrysler Jeep Corp. v. Fiat Chrysler Autos., LLC*, No. 22-0068, 2025 WL 822995, at *3 (D.N.J. Mar. 13, 2025) ("To state a claim for breach of contract under New Jersey law, a plaintiff must allege facts demonstrating '(1) the existence of a valid

---

[4]      "If it appears by affidavit satisfying the requirements of R. 4:4- 5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then consistent with due process of law, in personam jurisdiction may be obtained over any defendant [by] . . . mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to . . . the individual's dwelling house or usual place of abode."  N.J. Ct. R. 4:4-4(b)(1)(C).

8

contract; (2) that plaintiff performed under the contract; (3) the defendant's breach of the contract; and (4) damages resulting from the breach.'" (citation omitted)).[5]

Here, Plaintiff alleges that (i) it and Defendant Sri Hanuman entered into a valid contract, the Franchise Agreement, and Defendant Mehta provided Plaintiff with a valid with a Guaranty of Sri Hanuman's obligations under the Franchise Agreement, (Compl. ¶¶ 10 & 20; *see also* Exhibit A; Exhibit B); (ii) Sri Hanuman breached the agreement by failing to pay the non-refundable application or initial fee or the liquidated damages for premature termination, (*id*. ¶¶ 28–29); (iii) Mehta breached the Guaranty by failing to pay the liquidated damages owned to Plaintiff pursuant to the Guaranty's terms, (*id*. ¶¶ 20–22 & 43–46); (iv) Plaintiff suffered resulting damages in the amount of $148,000.00, (*see id*. ¶¶ 38 & 46); and (v) Plaintiff performed all of its obligations under the Franchise Agreement, (*id*. ¶ 32). Plaintiff further alleges that Sri Hanuman and Mehta co-made a valid Note in the amount of $15,000, pursuant to the terms of which the principal sum was payable to Plaintiff due on the earlier to occur of November 6, 2020 or on the date the facility opened. (*See* Exhibit C; *see also* Compl. ¶ 23–24). Plaintiff alleges that, despite their obligation to do so, Sri Hanuman and Mehta have not made any payment under the Note. (*See* Compl. ¶¶ 47–54).

Therefore, the Court finds that Plaintiff has sufficiently alleged a cause of action for breach of contract and that the threshold requirements for default judgment have been met.

---

[5]     The Court notes that some New Jersey courts state the elements of a breach of contract claim as a three-part (rather than four-part) test, excluding the prong stating that the claimant has to show it performed its own obligations. *See, e.g.*, *Fin. Servs. Vehicle Tr. ex rel. BMW Fin. Servs. NA, LLC v. Keitt*, No. 23-23188, 2025 WL 670014, at *3 (D.N.J. Mar. 3, 2025) ("[T]o state a claim for breach of contract under New Jersey law, a plaintiff must establish that (1) a valid contract exists between the parties, (2) the defendant failed to perform its obligations under that contract, and (3) the plaintiff suffered damages as a result." (citation omitted)); *Wedgewood Gardens Condo. Ass'n, Inc. v. Wedgewood Gardens Devs., Inc.*, No. A-0699-23, 2025 WL 400761, at *6 (N.J. Super. Ct. App. Div. Feb. 5, 2025) ("A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists 'a valid contract, defective performance by the defendant, and resulting damages.'" (citation omitted)). However, as explained herein, the Court finds that Plaintiff sufficiently states a claim for breach of contract against Defendants under either version of the test.

### D.    Propriety of Default Judgment

The Court next finds that it would be appropriate to enter default judgments against Defendants.  To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).  Here, Defendants have never appeared, let alone responded to the Complaint, and thus nothing in the record suggests that either might have a meritorious defense against Plaintiff's claims.  *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense."). Moreover, Defendants' failure to participate in this case has prejudiced Plaintiff, as it has prevented Plaintiff from otherwise resolving this case on the merits and significantly delayed its efforts to recover its funds.  *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm caused by [the d]efendant").

Finally, with respect to whether Defendants' default was the result of their culpable conduct, the Court finds that nothing in the record indicates that Defendants' failure to participate in this case has been due to anything other than their own willful conduct.  *See, e.g.*, *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (noting that the defendant is culpable when nothing suggests that anything other than the defendant's willful

10

negligence caused the failure to answer).  Based upon the foregoing, the Court finds that it would be appropriate to issue a default judgment in this case.

Therefore, the Court finds entry of default judgment against Defendants is proper. Accordingly, Plaintiff's Motion is **GRANTED** as to Defendants' liability.

### E.      Damages

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  Under Federal Rule of Civil Procedure 55(b) (2), a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages."  *Id*. at 1146 & 1149.  If the damages are for a "sum certain or a sum that can be made certain," however, further evidentiary inquiry is not necessary.  Fed. R. Civ. P. 55(b) (1); *Comdyne I*, 908 F.2d at 1149.  Reasonable liquidated damage clauses between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise.  *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 499 (1999); *Cent. Steel Drum Co. v. Gold Cooperage, Inc.*, 200 N.J. Super. 251, 265, *cert. denied*, 101 N.J. 303 (1985), *overruled on other grounds*, *Kutzin v. Pirnie*, 124 N.J. 500 (1991).  A liquidated damages clause is valid where such a clause "constitute[s] a reasonable forecast of the provable injury resulting from [the] breach" and where harm "is incapable or very difficult of accurate estimate."  *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 249–50 (1994) (citation omitted).

***Damages Under the Franchise Agreement***.  Here, Plaintiff's damages asserted under its breach of contract claim for liquidated damages pursuant to the Franchise Agreement "do not require further inquiry and will be awarded by the Court."  *Days Inns Worldwide, Inc. v. 5 Star,*

11

*Inc.*, No. 09-1009, 2012 WL 1232340, at \*6 (D.N.J. Apr. 11, 2012).  Here, the Court finds that the liquidated damages arising from the Franchise Agreement are for an agreed upon amount that is reasonable under the circumstances.  *Id.*; (*see also* D.E. No. 13-1 ¶¶ 29–36 (explaining the rationale behind the liquidated damages provision).  Plaintiff established that it is entitled to liquidated damages in the amount of $148,000.00, calculated pursuant to Section 12.1 of the Franchise Agreement, based on an amount "not less than the product of $2,000.00 per guest room described on the Schedule B."  (*See* Compl. ¶ 36; *see also* Mov. Br. at 8 (citing Exhibit A at 18–19); D.E. No. 13-1 ¶¶ 33–36)).  At the time of termination, Defendant Sri Hanuman was authorized to operate 74 such guest rooms.  (*See* Mov. Br. at 8).  Plaintiff has also established that its damages include $99,193.21 in prejudgment interest calculated at 1.5% per month on the total $148,000.00 in liquidated damages from October 17, 2021, which is 30 days following the date of termination. (*Id.*).  The prejudgment interest is also for a sum certain:

> BFS is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $99,193.41 from October 17, 2021 (thirty (30) days from the date of termination) to July 7, 2025 (the anticipated return date of this Motion), which amounts to 1,359 days. The $99,193.41 figure is calculated by multiplying $148,000.00 by 18% per year, which equals $26,640.00 in interest per year. That amount is then divided by 365 days to equal $72.99 in interest per day. When the per diem interest of $72.99 is multiplied by 1,359 days, the interest owed equals $99,193.41.

(Mov. Br. at 8; *see also* Exhibit A at 13).  Plaintiff is therefore entitled to recover the liquidated damages in the amount of $148,000 and prejudgment interest in the amount of $118,243.80, for a total of $266,243.80.[6]

---

[6]     Plaintiff requested interest in the amount of $99,193.41 based on July 7, 2025, the anticipated return date of this Motion.  Because 261 days have passed in between July 7, 2025 and the date of this judgment, calculated at a rate of $72.99 in interest per day, the amount in interest now totals $118,243.80.

***Damages Under the Initial Fee Note***.  The liquidated damages arising from the Initial Fee Note are likewise for an agreed upon amount that is reasonable under the circumstances.  Pursuant to the terms of the Note, the principal sum of $15,000 was payable to Plaintiff in one installment due on the earlier to occur of November 6, 2020 or the opening date of the facility.  (Compl. ¶ 49; *see also* Exhibit C.).  "The Note provides, in pertinent part, that if (i) a termination of the Franchise Agreement occurs for any reason, or (ii) a transfer occurs, then 'the outstanding principal balance of this Note shall be immediately due and payable without further notice, demand or presentment.'"  (*See id*. ¶ 50).  Plaintiff has also clearly outlined the amount of prejudgment interest:

> BFS is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $12,609.60 from November 6, 2020 (the due date of the Note) to July 7, 2025 (the anticipated return date of this Motion), which amounts to 1,704 days. The $12,609.60 figure is calculated by multiplying $15,000.00 by 18% per year, which equals $2,700.00 in interest per year. That amount is then divided by 365 days to equal $7.40 in interest per day. When the per diem interest of $7.40 is multiplied by 1,704 days, the interest owed equals $12,609.60.

(Mov. Br. at 8–9; *see also* Exhibit C at 1).  Plaintiff is therefore entitled to recover the principal sum of $15,000 and prejudgment interest in the amount of $14,541, for a total of $29,541.[7]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's unopposed Motion for Default Judgment against Defendants is **GRANTED**.  An appropriate Order follows.

Date:  March 24, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[7]    Plaintiff requested interest in the amount of $12,609.60 based on July 7, 2025, the anticipated return date of this Motion.  As with the damages under the Franchise Agreement, because 261 days have passed in between July 7, 2025 and the date of this judgment, calculated at a rate of $7.40 in interest per day, the amount in interest now totals $14,541.00.